UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN RUSK,

                                        Plaintiff,

                                                        Case # 10-CV-544-FPG

v.

                                                        DECISION AND ORDER

NEW YORK STATE THRUWAY AUTHORITY, et al.,

                                        Defendants.

        Plaintiff Brian Rusk brought this action alleging that he was terminated from his

employment at the New York State Transportation Authority ("NYSTA") in violation of his

statutory and constitutional rights.  In August 2014, the Court granted summary judgment in favor

of Defendants.  Now, years later, Plaintiff has filed motions to vacate the judgment and for post-

judgment discovery.  ECF Nos. 130, 133.  He contends that Defendants intentionally destroyed

evidence and concealed that fact, thus committing fraud on the court, and he requests an

opportunity to depose certain individuals who may have knowledge of the matter.  Defendants

oppose the motions.  For the reasons that follow, the Court DENIES both motions.[1]

## BACKGROUND

        In 1996, Plaintiff began his employment with NYSTA.  He worked as an assistant public

information officer, which involved various public-relations responsibilities.   In addition,

Plaintiff—with the consent of NYSTA—held outside employment as a public relations consultant.

---

[1] Though this Court is now handling Plaintiff's post-judgment motions, it in no way countenances Plaintiff's allegation that Magistrate Judge Schroeder's recommendation on the *ex parte* motion evinces a bias against Plaintiff.  *See* ECF No. 102-1 at 3; ECF No. 132 at 18-19.  Plaintiff's argument, which is unsupported by any relevant legal authority, is wholly without merit.  *See S.E.C. v. Razmilovic*, No. 04-CV-2276, 2010 WL 2540762, at *4 (E.D.N.Y. June 14, 2010) ("[C]laims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality.").

In September 2008, the New York Office of Inspector General ("OIG") received a complaint that Plaintiff was engaging in his outside employment on state time and with state resources.  In December 2009, the OIG notified NYSTA that it had completed its investigation, finding that "Plaintiff had in fact operated his public relations consulting business during office hours and while utilizing his personal and NYSTA phone in violation of NYSTA policy."  ECF No. 92 at 3.  In February 2010, NYSTA terminated Plaintiff's employment, ostensibly because of the OIG's findings.

In April 2010, Plaintiff brought the present action.  ECF No. 1.  He sued not only NYSTA (his formal employer), but also Thomas Pericak (his immediate supervisor), Michael Fleischer (then the Executive Director of NYSTA), and Donna Luh (a board member of NYSTA).  In essence, Plaintiff raised three theories for relief.  First, he claimed that he was terminated not because of his misconduct, but because he had submitted a "whistleblower"-style complaint to the OIG.  Plaintiff had complained that William Eagan, a recent appointee to NYSTA, had been installed there as part of a corrupt quid pro quo involving the Democratic Party.  *See* ECF No. 1 at 34-35.  Second, Plaintiff claimed that he was terminated due to his affiliation with the Republican Party.  He notes that the "political leadership controlling NYSTA's Board changed from Republican to Democrat" in the months before his termination.  *Id.* at 34.  Third, Plaintiff claimed that he did not receive the constitutional or statutory process due to him before his termination.  Plaintiff raised six claims encompassing these theories.

The case proceeded to discovery.  One of the flashpoints during discovery was the existence and production of emails concerning Plaintiff's firing and Eagan's hiring.

In June 2011, Plaintiff filed a motion seeking to compel Defendants to produce "all electronic communications regarding Plaintiff, his termination and/or the hiring of Plaintiff's

replacement, William Eagan."  ECF No. 19 at 3.  Plaintiff asserted "upon information and belief"

that Defendants, through email, "communicated amongst themselves and with others about

Plaintiff, his political affiliation and activities, his actual or alleged job performance and, most

critically, the termination of Plaintiff's employment in order to make room for the patronage hiring

of William Eagan."  *Id.* at 2.  Defendants countered that said claim was speculative and that they

had produced all the emails that they had.  *See* ECF No. 22 at 2, 4; *see id.* at 5 (declaration of

Michael Siragusa, Deputy Assistant Attorney General) ("[D]efendants have conducted 'a complete

electronic retrieval' and they have provided plaintiff with all documents responsive to his

discovery demands.").  In reply, Plaintiff stated that "it [was] difficult to believe that only 22 pages

of email correspondence [that Defendants produced] would be responsive to Plaintiff's discovery

requests," and he argued that Defendants should be required to detail the steps they had undertaken

to search for responsive emails.  ECF No. 24 at 2-6.

     In December 2011, Magistrate Judge Schroeder denied the motion to compel, reasoning

that "Plaintiff's speculation that additional e-mails exist is insufficient to overcome counsel's

declaration that a search for responsive documents has been conducted and that responsive

documents have been disclosed."  ECF No. 33 at 3.

     After discovery, the parties filed motions for summary judgment.  Judge Schroeder

recommended that summary judgment be granted in Defendants' favor, and this Court agreed.  *See*

ECF Nos. 82, 92.  Although some claims failed as a matter of law, other claims could not be

maintained because Plaintiff presented insufficient evidence to support his factual theory—

namely, that he was terminated due to his political affiliation and/or his whistleblower complaint.

*See* ECF No. 92 at 8-11.  Judgment was entered against Plaintiff in August 2014.  ECF No. 93.

In March 2019, Plaintiff submitted a motion to seal an *ex parte* motion to vacate judgment. ECF No. 96.  In the motion, Plaintiff alleged that Defendants had committed fraud on the court in connection with the intentional destruction of emails related to his lawsuit.  Plaintiff's counsel, Anthony Fleming, averred that he had spoken to two NYSTA employees, then identified as John Does but later disclosed as Robert Kossowski and Thomas Hurley, who alleged that Eagan's emails had been intentionally destroyed during the pendency of the litigation.  *See* ECF No. 131 at 2-3.  The Court refused to grant *ex parte* relief, but permitted Plaintiff to refile his motion to vacate, and to request post-judgment discovery, so long as the they were not *ex parte*.  ECF No. 105 at 3-4.  Plaintiff thereafter filed his present motions.  ECF Nos. 130, 133.

In the course of briefing, Plaintiff submitted an affidavit from Kossowski, who describes his recollection of the relevant events.[2]  Because Plaintiff otherwise relies on hearsay and an unauthenticated document to support his motions, Kossowski's affidavit is a critical piece of evidence.  Kossowski alleges as follows:

Kossowski is a real estate specialist at NYSTA and, during the relevant timeframe, worked under the supervision of Pericak, just as Rusk did.  ECF No. 152-1 at 2.  He worked in the cubicle next to Eagan, and, at the start of Eagan's employment, helped Eagan set up his "computer to automatically archive all e-mail."  *Id.* at 3.  Kossowski avers that in March 2012—approximately three months after Judge Schroeder denied Plaintiff's motion to compel—Eagan sought assistance from William Mazgai to recover an email he had previously sent.  Mazgai, an IT specialist at NYSTA, discovered that "all archived e-mails had been deleted and no longer were on Eagan's hard drive."  *Id.*  Eagan told Mazgai and Kossowski that his emails had been deleted "due to the Rusk lawsuit" and that "someone even provided him with written instructions to manually delete

---

[2] Defendants contend that the Court should not consider Kossowski's affidavit.  *See* ECF No. 148.  Because Defendants prevail even considering the affidavit, the Court need not address Defendant's argument.

the same." *Id.* Kossowski's affidavit does not identify the person who instructed Eagan to delete the emails.

Five months later, in August 2012, Kossowski met with Kathleen Kaczor, an Assistant Attorney General, prior to his deposition in this action. Attorney Kaczor explained the deposition process, after which Kossowski asked, "[W]hat should I say if they ask me about the deleted e-mails?" *Id.* Attorney Kaczor responded, "[W]hat deleted emails?" Kossowski stated "the e-mails which were deleted from Bill Eagan's computer." *Id.* Kossowski does not detail what Attorney Kaczor said in response to this allegation, but he does state that he requested "whistleblower protection" in connection with his disclosure of the issue. Attorney Kaczor told him that she was "not his lawyer" and asked him to leave so she could "make a phone call to her supervisor." *Id.* at 4. Later that day, Kossowski told Eagan he had disclosed the email issue to Attorney Kaczor, and Kossowski subsequently informed Hurley (his department head) and Pericak about it. To Kossowski's knowledge, no one took any action in response.

In November 2012, Assistant Attorney General Gary Levine accompanied Kossowski to his deposition. *Id.* at 5. Kossowski asked Attorney Levine what he should say if "they ask me about any deleted e-mails." *Id.* Attorney Levine told him that he "should just tell the truth if asked." *Id.* However, Attorney Fleming did not ask about deleted emails, and Kossowski did not volunteer the information. *Id.*

Attorneys Kaczor and Levine both deny that Kossowski disclosed a concern regarding deleted emails, and Pericak denies that any emails were ever deleted. *See* ECF Nos. 128, 140, 142. More substantively, Defendants have proffered evidence that casts doubt on Kossowski's claim that Eagan was even capable of "destroying" relevant emails. Joseph Igoe, an attorney with NYSTA, avers that he "not only issued litigation-hold letters, but also had NYSTA's Information

Technology Department ("IT") capture and preserve emails concerning Brian Rusk. Thus, irrespective of an individual employee's actions, emails concerning Rusk were preserved by the IT Department in the separate Rusk email account created for the specific purpose of ensuring their preservation."  ECF No. 127 at 3.

## DISCUSSION

Plaintiff argues that Defendants and their attorneys have engaged in conduct that constitutes "fraud on the court" for purposes of Federal Rule of Civil Procedure 60(d)(3), and he requests that the Court vacate the judgment on that basis.  Recognizing that he has only presented limited admissible evidence in support of his claim, Plaintiff also requests an opportunity for post-judgment discovery prior to a determination of the merits.

The Court denies both the motion for post-judgment discovery and the substantive motion to vacate.  Even without additional discovery, the record already establishes that Plaintiff had the same motive and opportunity to investigate the alleged misconduct during the litigation itself.  As will be discussed below, this fact is dispositive as to both motions.  Therefore, post-judgment discovery is unnecessary, and Plaintiff is not entitled to relief under Rule 60(d)(3).

## I.    Legal Standard

The Court first sets forth the standards applicable to Plaintiff's motion for post-judgment discovery and motion to vacate.

There is a "dearth of cases discussing a party's right to post-trial or post-judgment discovery other than discovery pursuant to Fed. R. Civ. P. 69(a) in aid of enforcing a judgment or execution."  *In re Wyatt, Inc.*, 168 B.R. 520, 523 (Bankr. D. Conn. 1994).  A request for post-judgment discovery "involves considerations not present in pursuing discovery in a pending action prior to a judgment," including "the public interest of the judiciary in protecting the finality of

judgments," and must therefore be  evaluated more strictly than a request for pretrial discovery. *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976).

Courts are not uniform in the showing they require to grant post-judgment discovery.  Some require that the movant make a "colorable" claim of fraud, while others appear to require a *prima facie* showing.  *See, e.g.*, *Pearson v. First NH Mortg. Corp.*, 200 F.3d 30, 35 (1st Cir. 1999); *White v. Nat'l Football League*, No. 92-CV-906, 2015 WL 501973, at *2 (D. Minn. Feb. 5, 2015); *Ames True Temper, Inc. v. Myers Indus., Inc.*, No. 05-CV-1694, 2007 WL 4268697, at *5 (W.D. Pa. Nov. 30, 2007).  Regardless, critical here is the additional restriction that a movant is not entitled to post-judgment discovery that it could have obtained during pretrial discovery.  *See H.K. Porter*, 536 F.2d at 1118 ("[The movant] is plainly not entitled to discovery of documents it did not request in pretrial discovery."); *Signtech USA, Ltd. v. Vutek, Inc.*, No. 95-CV-226, 1999 WL 33290625, at *3 (W.D. Tex. Aug. 9, 1999) ("[T]he parties should not be given the opportunity to reopen discovery for the purpose of discovering information which could have been gained before trial.").

As for the standard applicable to the motion to vacate, "fraud on the court" is a notoriously "nebulous concept."[3]  *Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972).  At a high level of generality, fraud on the court requires a level of misconduct that transcends the interests of the individual parties and more directly implicates the administration of justice.  The Supreme Court speaks of situations in which "the very temple of justice has been defiled," *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946), and the "integrity of the judicial process" undermined.  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944),

---

[3] Plaintiff filed a motion to "correct" his motion to vacate in order to make clear that he brings his motion under Rule 60(d)(3), as opposed to Rule 60(b).  ECF No. 151.  Plaintiff's motion is DENIED AS MOOT, as the Court already reads his motion in that manner.  While Plaintiff does not cite the relevant subsection, the motion is clearly premised on Rule 60(d)(3).  *See* ECF No. 132 at 6-7.  And given that Defendants submitted a responsive argument based on Rule 60(d)(3), ECF No. 138 at 20-30, Plaintiff's failure to cite the correct subsection is, if anything, harmless error.

*overruled on other grounds by Standard Oil Co. of California v. United States*, 429 U.S. 17 (1976).
Fraud on the court is a "wrong against the institutions set up to protect and safeguard the public."
*Id.*  It is because this kind of misconduct is an affront to the administration of justice that some of
the ordinary procedural barriers to post-judgment relief are waived—for example, there is no time
limitation for seeking relief from fraud on the court, and equitable bars like laches and unclean
hands may not apply.  *See id.*; *In re Old Carco LLC*, 423 B.R. 40, 51 (S.D.N.Y. 2010).  Indeed, a
court may take action *sua sponte* to "expunge [a] judgment" obtained by fraud on the court.
*Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d 798, 801 (2d Cir. 1960).

As the Second Circuit has routinely phrased it, fraud on the court embraces "only that
species of fraud which does or attempts to[] defile the court itself, or is a fraud perpetrated by
officers of the court *so that the judicial machinery cannot perform in the usual manner its impartial
task of adjudging cases*."  *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002)
(emphasis added); *Martina*, 278 F.2d at 801.  Similarly, the Second Circuit has said that fraud on
the court "is limited to fraud which seriously affects the integrity of the normal process of
adjudication." *King*, 287 F.3d at 95.

In the context of discovery abuses, spoliation of evidence, nondisclosure, and the like,
courts must take care to avoid stretching the notion of fraud on the court too broadly.  Of course,
any failure to disclose relevant evidence affects how the case is ultimately presented to the court
for disposition.  And, insofar as an inaccurate presentation of the facts can be said to "distort" the
court's review of the case, any discovery violation could arguably be framed as "fraud upon the
court."  11 Fed. Prac. & Proc. Civ. § 2870 (3d ed.).  But "[t]hat cannot be the sense in which the
term is used in Rule 60(d)(3)."  *Id.*  Instead, the analysis must focus on the degree to which the
party's alleged misconduct interferes with the judicial machinery itself.

For example, in *Gleason v. Jandrucko*, 860 F.2d 556 (2d Cir. 1988), the Second Circuit affirmed the district court's finding of no fraud upon the court.  In that case, the plaintiff brought a civil-rights action involving false arrest for a bank robbery.  *See Gleason*, 860 F.2d at 557. During discovery, the two (non-party) arresting police officers claimed that two eyewitnesses had identified the plaintiff as the bank robber with a high level of certainty.  *See id.* at 557-58.  After summary judgment, the parties agreed to settle the matter.  *Id.* at 557.   Later, however, the plaintiff learned that the eyewitnesses had in fact told officers they "were not at all certain that plaintiff was the robber."  *Id.* at 558.  Moreover, the eyewitnesses said that a photograph used to identify the plaintiff was "fuzzy."  *Id.*  The plaintiff sought to vacate the settlement, alleging that the defendants had committed fraud upon the court because the arresting officers perjured themselves at their depositions and because the defendants withheld the "fuzzy" photograph of the plaintiff.

The Second Circuit concluded that the circumstances did not rise to the level of fraud on the court.  It wrote:

> [P]laintiff had the opportunity in the prior proceeding to challenge the police officers' account of his arrest. The issues of lack of probable cause and bad faith were before the court from the outset. [Plaintiff] cannot be heard now to complain that he was denied the opportunity to uncover the alleged fraud. While the officers may have lied at their depositions, nothing prevented plaintiff during the pendency of the prior proceeding from deposing the two eyewitnesses to the bank robbery in order to impeach the officers' testimony. Instead, however, [Plaintiff] voluntarily chose to settle the action.

*Id.* at 559.  The Second Circuit emphasized that litigants are expected to use the available judicial mechanisms to root out perjury and fabricated evidence.  *Id.* at 560.  Because the plaintiff chose not to make use of those mechanisms to uncover the alleged fraud, he could not sustain a claim for fraud on the court.  *See id.*

These considerations are what underlie the oft-repeated principle that "perjury or fabricated evidence are not grounds for relief as 'fraud on the court.'"  *Great Coastal Exp., Inc. v. Int'l Broth.*

*of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982); *see also, e.g.*, *Pentagen Techs., Int'l Ltd. v. CACI Int'l, Inc.*, 282 F. App'x 32, 34 (2d Cir. 2008) (summary order) (no fraud on the court where party was "at most guilty of not disclosing material information during discovery"); *LinkCo., Inc. v. Akikusa*, 615 F. Supp. 2d 130, 137 (S.D.N.Y. 2009) (stating that "the possibility of obstruction of discovery and witness perjury . . . are insufficient for an independent action based upon a fraud on the court").  Where a party has the motivation and means to uncover the fraud during the litigation itself, it cannot pass on that opportunity and later challenge the fraud via Rule 60(d)(3). *See Gleason*, 860 F.2d at 559-60; *Great Coastal*, 675 F.2d at 1357 ("Perjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible."); *In re Levander*, 180 F.3d 1114, 1120 (9th Cir. 1999) (stating that "perjury or non-disclosure alone" does not constitute fraud on the court where "the plaintiff had the opportunity to challenge the alleged perjured testimony or non-disclosure because the issue was already before the court").

Contrast the result in *Gleason* with that in *Leber-Krebs, Inc. v. Capitol Records*, 779 F.2d 895 (2d Cir. 1985).  That case "involved a creditor who moved to confirm an *ex parte* attachment order within the statutorily prescribed five-day period."  *Gleason*, 860 F.2d at 559 (summarizing facts in *Leber-Krebs*).  "The district court denied the motion, relying on the garnishee's false representation that it held none of the debtor's assets."  *Id.*  Because of the misrepresentation, "the creditor lost the opportunity to enforce his judgment against the debtor."  *Id.*  The Second Circuit held that such actions constituted fraud on the court.  *Leber-Krebs*, 779 F.2d at 899.

Both *Gleason* and *Leber-Krebs* involve, broadly speaking, misrepresentation or fraud, but the context in which the misconduct occurred is materially distinguishable.  While parties are expected and given various mechanisms to investigate witnesses' factual assertions during the

discovery process, the same cannot be said of a garnishee's statement in an ancillary attachment proceeding. Thus, unlike the plaintiff in *Gleason*, the plaintiff in *Leber-Krebs* had no opportunity (or reason) to challenge the garnishee's claim. *See id.* Fraud on the court could be found under those circumstances.

These cases illustrate what courts mean when they define fraud on the court as fraud "which seriously affects the integrity of the normal process of adjudication." *King*, 287 F.3d at 95. It is fraud, misconduct, or other malfeasance that is directed at, not contemplated by, and not redressable within, the ordinary processes of the rough-and-tumble world of adversarial litigation.

This may in part explain why courts consider an attorney's participation in the discovery misconduct to be highly relevant, if not necessary, to a claim of fraud on the court. *See Hawkins v. Lindsley*, 327 F.2d 356, 359 (2d Cir. 1964); *Pentagen*, 282 F. App'x at 34; *Lockwood v. Bowles*, 46 F.R.D. 625, 632 (D.D.C. 1969). An attorney is an officer of the court and must act with integrity and honesty before it. *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1080 (2d Cir. 1972). The legal system may contemplate that litigants will root out perjury or fabricated evidence in the ordinary course of litigation, *Great Coastal*, 675 F.2d at 1357, but it does not expect or presume that an attorney will be untruthful in his or her representations to the court. The opposite is true. *See Kupferman*, 459 F.2d at 1080. Therefore, perjury, non-disclosure, or other discovery misconduct effectuated through counsel has a higher likelihood of short-circuiting the judicial machinery than that carried out by a witness or party. But importantly, the issue of concern is an attorney's deliberate or knowing misrepresentation, not a negligent or inadvertent one. *See Pentagen*, 282 F. App'x at 34; *Kupferman*, 459 F.2d at 1080-81; *United States v. Gelb*, No. 86-CV-1552, 1991 WL 20011, at *5 (S.D.N.Y. Feb. 4, 1991) ("Mere error is not fraud upon the court.").

## II.    Analysis

The alleged misconduct can be distilled into two components.  *See* ECF No. 152 at 2.  First is the underlying destruction of evidence in which Eagan, and possibly others, engaged. Kossowski avers that William Eagan, at the behest of and in concert with persons unknown within NYSTA, intentionally destroyed emails due to Plaintiff's lawsuit.  ECF No. 152-1 at 3.  Eagan deleted this evidence in Spring 2011, after the lawsuit had been initiated and after Attorney Igoe issued a litigation hold.  Plaintiff believes that Eagan's actions may be one facet of a broader conspiracy to destroy any emails that connected Plaintiff's termination to Eagan's hiring and/or Plaintiff's political affiliation.  *See* ECF No. 131 at 8 ("It is not mere speculation to assume that other NYSTA representatives involved in the Rusk firing and Eagan hiring had their e-mails deleted.").

The second component of the misconduct is the subsequent "cover up" of the conspiracy by Attorneys Kaczor and Levine.[4]  ECF No. 152 at 2.  Specifically, Kossowski notified Attorney Kaczor in August 2012 and Attorney Levine in November 2012 that Eagan had destroyed emails due to Plaintiff's lawsuit.  *See* ECF No. 152-1 at 4-5.  Neither attorney investigated the issue or disclosed the information to Plaintiff or the Court.  Plaintiff argues that such nondisclosure amounts to fraud on the court.  *See* ECF No. 131 at 5; ECF No. 152 at 4-6.  He also asserts that Attorney Kaczor committed fraud on the court when she subsequently relied on the absence of evidence to obtain summary judgment.  *See* ECF No. 131 at 4-8.

---

[4] Plaintiff has not been entirely clear on which attorneys he believes committed misconduct, *see, e.g.*, ECF No. 102-1 at 8; ECF No. 132 at 2-3, but his most recent filings indicate that his claims are limited to Attorneys Kaczor and Levine.  *See* ECF No. 152 at 4-6, 7-9.  The Court limits its analysis accordingly.

Having reviewed all of the materials submitted thus far,[5] the Court declines to order post-judgment discovery.  In the Court's view, the dispositive fact is that Plaintiff had the (1) same motive and (2) same opportunity to investigate the nondisclosure and spoliation of evidence during the litigation.[6]  A party is not entitled to post-judgment discovery that he could have obtained during pretrial discovery.  *See H.K. Porter*, 536 F.2d at 1118.

For the same reason, Plaintiff is not entitled to substantive relief under Rule 60(d)(3).  That provision may not be invoked to redress fraud that could have been discovered through the ordinary litigation process.  *See Gleason*, 860 F.2d at 559-60; *Great Coastal*, 675 F.2d at 1357. This makes sense given the narrow purpose of the rule: misconduct that could have been redressed through the ordinary judicial machinery is not the type of misconduct that poses a serious risk to said machinery.

In this case, the record establishes that, during the litigation, Plaintiff believed Defendants had withheld or destroyed electronic communications (same motive), and Plaintiff proceeded to investigate that possibility over the course of pretrial discovery (same opportunity).  As early as June 2011, Plaintiff filed a motion to compel, arguing that Defendants had not produced all relevant electronic communications.   In support, Attorney Fleming stated his belief that "Defendants communicated amongst themselves and with others about Plaintiff, his political affiliation and activities, his actual or alleged job performance and, most critically, the termination of Plaintiff's employment in order to make room for the patronage hiring of William Eagan."  ECF No. 19 at 2.  He expressed skepticism over Defendants' claim that they produced all emails in their

---

[5] For ease of analysis, the Court limits its explicit discussion to the facts alleged in Kossowski's affidavit.  However, the Court has fully reviewed all of the allegations Plaintiff marshals in support of his motions, including the hearsay conversations between Attorney Fleming  and Hurley and Kossowski, and including the unauthenticated document. None of this additional evidence changes the result or reasoning of the Court's decision.

[6] Because this issue is dispositive, the Court need not address Defendants' other arguments.

possession, opining that "[t]here had to have been electronic communications occurring." *Id.* at 5; *see also* ECF No. 24 at 2 (stating that it "is difficult to believe that only 22 pages of email correspondence would be responsive to Plaintiff's discovery requests").

Although Judge Schroeder denied the motion, that did not discourage or prevent Plaintiff from deposing seven individuals about electronic communications, including whether emails had been saved or deleted. *See* ECF No. 140 at 10-65. In one instance, Attorney Fleming directly asked whether emails had been "purged." *See id.* at 32-33 (asking Michael Fleischer whether he purged "any e-mails from [his] computer system regarding [Plaintiff]"). Plaintiff even questioned individuals outside of NYSTA about their possession of emails concerning Plaintiff or Eagan. *See id.* at 49-50, 54-57, 62-63. Insofar as neither defense counsel nor any other attorney objected to this line of questioning at any deposition, Plaintiff had free rein to investigate what, if anything, happened to the emails he believed existed.

Moreover, once judgment was entered against Plaintiff, he proceeded to file a FOIL action, with Attorney Fleming's assistance, on the ground that NYSTA failed to "adequately respond to a . . . request for e-mails" related to his termination and Eagan's hiring. ECF No. 98 at 4. Plaintiff states that he instituted the FOIL action "because of [his] belief and determination that NYSTA had to have e-mails relating to his firing and/or William Eagan's hiring." *Id.*

The course of conduct in which Plaintiff and Attorney Fleming engaged demonstrate that during the litigation, they suspected that NYSTA had withheld or "purged" relevant emails. More importantly, the record shows that Plaintiff had the opportunity to investigate that suspicion: without objection, Plaintiff deposed numerous individuals about the existence and retention of relevant emails. Despite having the opportunity and motive to do so, when Plaintiff deposed Kossowski during pre-trial discovery, he chose not to ask Kossowski—a close co-worker of Eagan

who had conversations with Eagan about his hiring and Plaintiff's firing—about the issue.  *See* ECF No. 126 at 20-73.

Therein lies the problem.  As Kossowski's affidavit now reveals, had Plaintiff questioned him on the matter, Kossowski would have revealed the alleged spoliation scheme and would have identified various individuals that Plaintiff now asks to depose.  *See* ECF No. 134 at 2.  Plaintiff could then have used the ordinary tools of discovery to investigate and seek sanctions for the fraud.  Plaintiff acknowledges as much.  *See* ECF No. 102 at 4-6 (stating that Kossowski "would have provided probative and relevant information regarding the destruction of electronic and email records" had he been questioned on the matter).

But Plaintiff counters that neither he nor his counsel "could or should have known that Defendants had engaged in the destruction of evidence."  ECF No. 152 at 7.  Plaintiff asserts that he justifiably relied on the statements of opposing counsel that all emails that existed were produced.  ECF No. 102 at 5; ECF No. 152 at 7.  He also states that "[t]he focus of all depositions was on . . . the merits of the case that was then pending, not on the *spoliation* of evidence."  ECF No. 152 at 10-11.

Plaintiff's assertions are inconsistent with his and his counsel's actual conduct, however.  It is clear that neither Plaintiff nor Attorney Fleming relied on opposing counsel's representations, because they proceeded to ask a number of NYSTA-affiliated individuals about email retention and deletion, and because they then filed a FOIL action alleging that NYSTA failed to produce relevant emails.  These are not the actions of one who has laid to rest any suspicions about the non-disclosure or spoliation of evidence.

This is not to say that Plaintiff knew or should have known of the particulars of the suspected spoliation and/or nondisclosure that Kossowski now alleges.  The Court's point is that

spoliation and non-disclosure of emails was an issue that Plaintiff identified and considered during the underlying litigation, and he actively investigated that issue through the ordinary tools of pretrial discovery.  Unfortunately, he chose not to question the witness who he now knows had relevant information on that issue.  This is analogous to the facts in *Gleason*: the plaintiff there had no specific suspicion of perjury, but because he, like all parties, is expected to investigate witness credibility during discovery, he did not have cause to complain when he failed to do so and later learned of the perjury.  Here, Plaintiff had no specific evidence of spoliation or non-disclosure, but he nonetheless believed something untoward occurred with regard to the production of emails, and he investigated that matter during discovery.  He too has no cause to complain, since he chose not to ask Kossowski, a relevant witness, about the issue.

Spoliation is certainly not an issue that will arise in every case—unlike, say, the credibility of an eyewitness, as in *Gleason*.  But when it does arise, spoliation is a matter that can oftentimes be ferreted out through the usual tools of discovery, and remedied in the ordinary course, much like perjury or non-disclosure.  *See generally* Fed. R. Civ. P. 37 (identifying sanctions that may be imposed where a party fails to comply with discovery obligations).  In those circumstances where spoliation *is* at issue and *can be* investigated and remedied through the normal judicial machinery, it does not pose a serious risk of "affect[ing] the integrity of the normal process of adjudication." *Gleason*, 860 F.2d at 559.  To the contrary, it is incumbent upon a party to investigate such claims during the litigation.  *Cf. id.* at 559-60.  By the same logic, Plaintiff is not entitled to post-judgment discovery on matters he had the opportunity to litigate, but chose not to fully investigate, during the pendency of the lawsuit.

Put simply, Plaintiff clearly suspected and made an issue of spoliation/non-disclosure of emails during the litigation, and sought to investigate those suspicions.  Nevertheless, without any

connivance on the part of Defendants or their attorneys, Plaintiff chose not to ask Kossowski about spoliation or the non-disclosure of electronic communications.  Had he done so, he would have learned about the alleged fraud and would have had an opportunity to investigate it further.  That is why it is difficult to view Plaintiff's motions as anything other than improper requests for a second bite at the apple.

The only complicating factor is the alleged involvement of defense counsel, Attorneys Kaczor and Levine.  As discussed above, the nature and extent of an attorney's involvement in the fraud is a significant consideration.  Nevertheless, considering defense counsel's conduct together with the underlying spoliation of evidence, the Court cannot conclude that Plaintiff was denied the opportunity to investigate this issue.  Kossowski does not allege that either Attorney Kaczor or Attorney Levine ordered him to keep silent or otherwise discouraged him from discussing the topic at his deposition.  To the contrary, Attorney Levine told Kossowski to "tell the truth" if asked about the deleted emails.  ECF No. 152-1 at 5.  And, as previously noted, no attorney ever objected to Plaintiff's investigation of the email issues during depositions.  Thus, in no way did the defense attorneys prevent Plaintiff from investigating and addressing this issue during the litigation.  *See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (stating that a movant must show that the fraud "prevented [him] from fully and fairly presenting his case").

To be sure, Plaintiff's argument is not so much that the attorneys' misconduct prevented him from investigating the matter during discovery, but that defense counsel stayed silent and relied on the absence of evidence to obtain summary judgment.  In this way, the attorneys could arguably be said to have procured court action by way of a fraudulent omission. *Cf. Hawkins*, 327

F.2d at 359 (stating that fraud on the court exists where "officers of the court attempted to secure action of the court on the basis of documents known by them to be false").

Even when the claim is framed in those terms, the Court remains unconvinced. An attorney's participation or involvement in the fraud must be deliberate or knowing; fraud on the court is not a mechanism to cure an attorney's negligence or inadvertent error. *See Pentagen Techs.*, 282 F. App'x at 34; *Kupferman*, 459 F.2d at 1080-81. For example, "[a] lawyer does not commit fraud on the court by arguing for summary judgment on grounds that the record does not contain certain evidence, even if it is later discovered that the evidence existed but was not in the record." *Pentagen Techs.*, 282 F. App'x at 34. The Second Circuit has also cautioned that an attorney's conduct must be evaluated in context and without the distorting effects of hindsight. *See Kupferman*, 459 F.2d at 1080-81.

Here, the only evidence Plaintiff relies on to show Attorney Kaczor's or Attorney Levine's knowledge or intent is that Kossowski told them that emails had been deleted from Eagan's computer. Taken as true, this remark must still be understood in context. An email is not ordinarily a single document that can be destroyed unilaterally by either the sender or recipient. Plaintiff himself acknowledged this fact during the litigation: generally, the recipient and the sender would both have copies of any email. *See* ECF No. 24 at 2-3. Furthermore, Attorney Igoe, then assistant counsel for NYSTA, avers that at the start of the litigation, he sent a litigation hold to all relevant employees to preserve any "relevant records related to the Rusk lawsuit." ECF No. 141 at 2. He also directed the IT department "to establish an e-mail account for the automatic forwarding of every e-mail sent or received by employees, regardless of subject, who were the recipients of the litigation hold."[7] ECF No. 141 at 2.

---

[7] Plaintiff does not dispute Attorney Igoe's statement of the steps he took to preserve relevant emails, but Plaintiff posits that NYSTA employees may have disregarded Attorney Igoe's directives. *See* ECF No. 152 at 7-9. Even if

Given the realities of how email technology works and the specific measures Attorney Igoe attempted to employ to preserve emails, it requires an unreasonable inferential leap to conclude that Attorneys Levine and Kaczor deliberately participated in or knowingly covered up a broad spoliation scheme merely because they were notified that one set of copies of emails had been deleted from an employee's work computer.  That unilateral act could not result in the wholesale destruction of all copies of the emails.  *See Lewis v. Bay Indus., Inc.*, 51 F. Supp. 3d 846, 860 (E.D. Wisc. 2014) ("[T]he fact that an employee may have deleted an email from his inbox does not mean that the email was destroyed.").  Certainly, Kossowski's disclosure may have been grounds for further inquiry by counsel, but the Court is presently concerned only with what defense counsel *knew*, not with what they *should have done*.

In other words, the fact that Attorneys Kaczor and Levine may have known that some copies of emails had been deleted from one employee's work computer does not reasonably permit that inference that they thereby knew of a broad spoliation scheme whereby all copies of relevant emails were destroyed.  By extension, it cannot be reasonably inferred that the attorneys knowingly failed to disclose the spoliation scheme, or that Attorney Kaczor made knowingly false representations at summary judgment when she argued there was insufficient evidence to support Plaintiff's claims.

Accordingly, the evidence presently before the Court does not suggest a level of attorney involvement that would rise to the level of fraud on the court.  Furthermore, insofar as Plaintiff does not propose deposing any of the defense attorneys involved, it is unlikely that post-judgment discovery would yield more inculpatory evidence.  For that reason, however Plaintiff frames the

---

Plaintiff's claim is true, there is nothing to suggest that either Attorney Kaczor or Attorney Levine knew that Attorney Igoe's directives had not been implemented.

putative fraud committed by Attorneys Kaczor and Levine, it is insufficient to warrant post-judgment discovery, let alone substantive relief.

### III.     Summary

The Court declines to order post-judgment discovery or to vacate the judgment due to fraud on the court.  Plaintiff cannot obtain relief based on the claimed spoliation, since he had the same opportunity and motive to investigate the issue during pre-trial discovery, and an adequate investigation would have revealed the information he now seeks.  Furthermore, Plaintiff may not proceed on the theory that Attorneys Kaczor and Levine committed misconduct by failing to disclose the issue or by relying on the absence of evidence to obtain summary judgment, as there is insufficient evidence to suggest the necessary knowledge or intent, and post-judgment discovery is unlikely to yield any additional inculpatory evidence.

### IV.     May 22, 2020 Letter by Attorney Fleming

Finally, the Court must address one housekeeping matter.  In his reply brief, Plaintiff appears to claim that he sent a letter to the Court dated May 22, 2020.  *See* ECF No. 153 at 3; ECF No. 153-1 (copy of letter).  The docket does not reflect this letter and instead shows the following series of events: on May 12, 2020, Plaintiff sent an email seeking an extension of time to file his motion; on the same day, the Court granted the extension to May 29, 2020; on May 26, 2020, Plaintiff submitted another letter seeking a further extension, which the Court granted.  *See* ECF Nos. 106, 107, 108, 117.  The Court has no record of a May 22, 2020 letter being filed.

Given that these post-judgment proceedings were *ex parte* for a period of time, it is important to ensure a complete record.  Accordingly, within seven days, Plaintiff shall file a report on the docket indicating whether and how he submitted the May 22, 2020 letter to the Court.  To

the extent he sent it by email to chambers, Plaintiff shall provide a PDF copy of the email (with all attachments included).  This will ensure that all submissions are publicly available.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion to vacate (ECF No. 130) and motion for post-judgment discovery (ECF No. 133) are DENIED.  By **January 29, 2021**, Plaintiff shall file a report on the docket concerning the May 22, 2020 letter, as discussed above.   This case remains closed.

IT IS SO ORDERED.

Dated: January 22, 2021
      Rochester, New York

                        HON. FRANK P. GERACI, JR.
                        Chief, United States District Court