UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN RUSK,

                              Plaintiff,

v.

                             Case # 10-CV-544-FPG

                             DECISION AND ORDER

NEW YORK STATE THRUWAY AUTHORITY, et al.,

                              Defendants.

## INTRODUCTION

Plaintiff Brian Rusk moves for reconsideration of the Court's January 22, 2021 Decision & Order, in which the Court denied his motions to vacate the judgment and for post-judgment discovery.[1]  *See* ECF Nos. 158, 161, 163.  Defendants oppose the motion, ECF No. 166, and Plaintiff has filed his reply.  ECF No. 169.  For the reasons that follow, Plaintiff's motion is DENIED.

## BACKGROUND

In April 2010, Plaintiff brought this action alleging that he was terminated from his employment at the New York State Transportation Authority ("NYSTA") in violation of his statutory and constitutional rights.  He sued not only NYSTA, but also Thomas Pericak (his immediate supervisor), Michael Fleischer (then the Executive Director of NYSTA), and Donna Luh (a board member of NYSTA).  In essence, Plaintiff raised three theories for relief.  First, he claimed that he was terminated because he had submitted a "whistleblower"-style complaint to the

---

[1] Plaintiff is represented by new counsel, George A. Rusk, in connection with his motion.  Plaintiff indicates that his prior counsel, Andrew P. Fleming, "does not agree with the submittal of this [motion] and it is being filed without his approval."  ECF No. 161 at 1.

1

Office of Inspector General.  Plaintiff had complained that William Eagan, a recent appointee to NYSTA, had been installed there as part of a corrupt quid pro quo involving the Democratic Party. *See* ECF No. 1 at 34-35.  Second, Plaintiff claimed that he was terminated due to his affiliation with the Republican Party.  He alleged that the "political leadership controlling NYSTA's Board changed from Republican to Democrat" in the months before his termination.  *Id.* at 34.  Third, Plaintiff claimed that he did not receive the constitutional or statutory process due to him before his termination.  Plaintiff raised six claims encompassing these theories.

The case proceeded to discovery.  One of the flashpoints during discovery was the existence and production of emails concerning Plaintiff's firing and Eagan's hiring.  In June 2011, Plaintiff filed a motion seeking to compel Defendants to produce "all electronic communications regarding Plaintiff, his termination and/or the hiring of Plaintiff's replacement, William Eagan." ECF No. 19 at 3.  Plaintiff asserted "upon information and belief" that Defendants, through email, "communicated amongst themselves and with others about Plaintiff, his political affiliation and activities, his actual or alleged job performance and, most critically, the termination of Plaintiff's employment in order to make room for the patronage hiring of William Eagan."  *Id.* at 2. Defendants countered that said claim was speculative and that they had produced all the emails that they had.  *See* ECF No. 22 at 2, 4; *see id.* at 5 (declaration of Michael Siragusa, Deputy Assistant Attorney General) ("[D]efendants have conducted 'a complete electronic retrieval' and they have provided plaintiff with all documents responsive to his discovery demands.").  In reply, Plaintiff stated that "it [was] difficult to believe that only 22 pages of email correspondence [that Defendants produced] would be responsive to Plaintiff's discovery requests," and he argued that Defendants should be required to detail the steps they had undertaken to search for responsive emails.  ECF No. 24 at 2-6.

In December 2011, Magistrate Judge Schroeder denied the motion to compel, reasoning that "Plaintiff's speculation that additional e-mails exist is insufficient to overcome counsel's declaration that a search for responsive documents has been conducted and that responsive documents have been disclosed." ECF No. 33 at 3.

After discovery, the parties filed motions for summary judgment. Judge Schroeder recommended that summary judgment be granted in Defendants' favor, and this Court agreed. *See* ECF Nos. 82, 92. Although some claims failed as a matter of law, other claims could not be maintained because Plaintiff presented insufficient evidence to support his factual theory—namely, that he was terminated due to his political affiliation and/or his whistleblower complaint. *See* ECF No. 92 at 8-11. Judgment was entered against Plaintiff in August 2014. ECF No. 93.

In March 2019, Plaintiff submitted a motion to seal an *ex parte* motion to vacate judgment. ECF No. 96. In the motion, Plaintiff alleged that Defendants had committed fraud on the court in connection with the intentional destruction of emails related to his lawsuit. Plaintiff's counsel at the time, Attorney Fleming, averred that he had spoken to two NYSTA employees, then identified as John Does but later disclosed as Robert Kossowski and Thomas Hurley, who alleged that Eagan's emails had been intentionally destroyed during the pendency of the litigation. *See* ECF No. 131 at 2-3. The Court refused to grant *ex parte* relief, but permitted Plaintiff to refile his motion to vacate, and to request post-judgment discovery, so long as the motions were not *ex parte*. ECF No. 105 at 3-4. Plaintiff thereafter filed his non-*ex parte* motions to vacate and for post-judgment discovery. ECF Nos. 130, 133.

In support of the motions, Plaintiff alleged two forms of misconduct by Defendants and their attorneys. First was the underlying destruction of email evidence in which Eagan, and possibly others, engaged. Kossowski averred in an affidavit filed with the Court that William

3

Eagan, at the behest of and in concert with persons unknown within NYSTA, intentionally destroyed emails due to Plaintiff's lawsuit. ECF No. 152-1 at 3. Eagan deleted this evidence in Spring 2011, after the lawsuit had been initiated and after a litigation hold had been issued. Plaintiff believed that Eagan's actions may be one facet of a broader conspiracy to destroy any emails that connected Plaintiff's termination to Eagan's hiring and/or Plaintiff's political affiliation. *See* ECF No. 131 at 8 ("It is not mere speculation to assume that other NYSTA representatives involved in the Rusk firing and Eagan hiring had their e-mails deleted.").

Plaintiff also alleged a second form of the misconduct—the subsequent "cover up" of the conspiracy by Assistant Attorneys General Kaczor and Levine. ECF No. 152 at 2. Specifically, Kossowski alleged that he notified Attorney Kaczor in August 2012 and Attorney Levine in November 2012 that Eagan had destroyed emails due to Plaintiff's lawsuit. *See* ECF No. 152-1 at 4-5. Neither attorney investigated the issue or disclosed the information to Plaintiff or the Court. Plaintiff argued that such nondisclosure amounts to fraud on the court. *See* ECF No. 131 at 5; ECF No. 152 at 4-6. He also asserted that Attorney Kaczor committed fraud on the court when she subsequently relied on the absence of evidence to obtain summary judgment. *See* ECF No. 131 at 4-8.

> In its January 22, 2021 Decision & Order, the Court denied Plaintiff's motions:
>
> The Court declines to order post-judgment discovery or to vacate the judgment due to fraud on the court. Plaintiff cannot obtain relief based on the claimed spoliation, since he had the same opportunity and motive to investigate the issue during pre-trial discovery, and an adequate investigation would have revealed the information he now seeks. Furthermore, Plaintiff may not proceed on the theory that Attorneys Kaczor and Levine committed misconduct by failing to disclose the issue or by relying on the absence of evidence to obtain summary judgment, as there is insufficient evidence to suggest the necessary knowledge or intent, and post-judgment discovery is unlikely to yield any additional inculpatory evidence.

ECF No. 158 at 20. Plaintiff now moves for reconsideration of the Court's Decision & Order. ECF Nos. 161, 163.

## DISCUSSION

Plaintiff challenges the Court's decision on several grounds. Defendants oppose the motion and also argue that Plaintiff's motion is untimely. The Court addresses all of these issues below.

### I. Legal Standard & Timeliness

Plaintiff filed his motion for reconsideration on March 18, 2021—55 days after the Court issued its Decision & Order.[2] Plaintiff cites Rules 59(e) and 60(b)(6) as the vehicles for his motion. ECF No. 163 at 1. Rule 59(e) permits a court to "alter or amend a judgment." Fed. R. Civ. P. 59(e). As Defendants point out, however, a motion brought under Rule 59(e) must be filed "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). This time period cannot be extended. *See* Fed. R. Civ. P. 6(b)(2); *see also Roistacher v. Bondi*, 624 F. App'x 20, 22 (2d Cir. 2015) (summary order); *Beverly v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-8486, 2020 WL 5750828, at *2 (S.D.N.Y. Sept. 25, 2020) (collecting cases and noting that Rule 59's deadline "cannot be waived"). Thus, Plaintiff can obtain relief, if at all, only via Rule 60(b).

Rule 60(b) lists several circumstances in which, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). A Rule 60(b) motion may be premised on a claim of, *inter alia*, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Although Rule 60(b)(1) has been interpreted to allow a district court to correct its own "errors of law or mistakes of fact,"

---

[2] Previously, on March 4, 2021—41 days after the Court's Decision & Order—Plaintiff filed an informal letter disputing the Court's rationale. ECF No. 161. The Court did not construe that letter as a formal motion for reconsideration. ECF No. 162. Regardless, whether the timeliness of Plaintiff's motion is calculated based on the filing of the letter or the motion, the Court reaches the same result.

*Salvagno v. Williams*, No. 17-CV-2059, 2019 WL 2720758, at *8 (D. Conn. June 27, 2019); *see also Castro v. Bank of New York Mellon*, 852 F. App'x 25, 28 (2d Cir. 2021) (summary order), the movant "must bring the motion before the time for appeal has elapsed." *Wright v. Poole*, 81 F. Supp. 3d 280, 291-92 (S.D.N.Y. 2014) (collecting cases). In a civil case, the time for appeal is "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). Therefore, Rule 60(b)(1) is unavailable to Plaintiff, as he filed his motion nearly a month after the time for appeal elapsed.[3] *See Wright*, 81 F. Supp. 3d at 292.

Granted, Plaintiff cites Rule 60(b)(6), not Rule 60(b)(1), as the basis for his motion. Subsection (b)(6) identifies a "catch-all provision that permits reconsideration for 'any other reason that justifies relief.'" *Sankara v. City of New York*, No. 15-CV-6928, 2019 WL 549018, at *2 (S.D.N.Y. Feb. 11, 2019). A Rule 60(b)(6) motion must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1). A movant may invoke this provision only if the motion "is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988); *see also Maduakolam v. Columbia Univ.*, 866 F.2d 53, 55 (2d Cir. 1989). Because court mistakes of law and fact are encompassed by Rule 60(b)(1), Plaintiff may not rely on Rule 60(b)(6), and his motion must be denied as untimely. *See*

---

[3] Federal Rule of Appellate Procedure 4 permits a district court to extend the time to file a notice of appeal if the party "shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A)(ii). Plaintiff argues that he is entitled to an extension of time because of the unique circumstances of the case and because he substituted counsel in the month after the Court's Decision & Order. *See* ECF No. 169 at 7, 15-18. The Court cannot find good cause or excusable neglect under these circumstances. By his own admission, Plaintiff consciously decided not to appeal the Court's Decision & Order, citing the "high costs of litigation" and "poor chances of success." ECF No. 161 at 6. By choosing to forego an appeal and instead filing a motion for reconsideration, Plaintiff is attempting to use Rule 60(b) in an improper manner. *See Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964) ("Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment."); *see also Niederland v. Chase*, 425 F. App'x 10, 12 (2d Cir. 2011) (summary order) (noting that Rule 60(b)(1) motions "based on district court mistakes are generally deemed untimely if made after the deadline for filing a notice of appeal," in part because the rule should not be "a vehicle to assert an otherwise time-barred appeal").

*Wright*, 81 F. Supp. 3d at 291-92; *Tineo v. Heath*, No. 09-CV-3357, 2014 WL 4437466, at *2-3 (E.D.N.Y. Sept. 8, 2014).

The untimeliness of Plaintiff's motion is an independent and sufficient reason to deny it. Nevertheless, for the sake of completeness, the Court will address the motion on the merits. The standard applicable to a motion for reconsideration is "strict," and reconsideration should be denied "unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (discussing in context of Rule 59). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Id.* (internal quotation marks omitted).

## II.  Plaintiff's Motion

### a.  Standard for Post-Judgment Discovery

Plaintiff first argues that the Court applied the incorrect standard to determine whether he was entitled to post-judgment discovery. In its Decision & Order, the Court recognized the "dearth of cases discussing a party's right to post-trial or post-judgment discovery" and, after surveying the existing authority, concluded that a "movant is not entitled to post-judgment discovery that it could have obtained during pretrial discovery." ECF No. 158 at 6-7. In Plaintiff's case, the Court found that he was not entitled to said discovery because he had the "(1) same motive and (2) same opportunity to investigate the nondisclosure and spoliation of evidence during the litigation." *Id.* at 13. Plaintiff contends that the proper standard is whether "good cause exists for the discovery" and whether "such discovery will achieve substantial justice." ECF No. 163-2 at 8 (internal quotation marks omitted).

7

Having reviewed the cases and authorities that Plaintiff cites, the Court is not persuaded that its position is incorrect. Plaintiff's authorities may, as he argues, suggest that post-judgment discovery should be permitted with a degree of liberality to "achieve substantial justice." *Id.* at 6. But none establishes that, in deciding whether to grant post-judgment discovery, it is *inappropriate* for the district court to consider the fact that the movant could have obtained the requested discovery before trial. That is, even if the Court were to accept that "good cause" is the appropriate standard, that standard would presumably allow the Court to consider Plaintiff's actions and diligence during pretrial discovery. *Cf. Baburam v. Fed. Express Corp.*, 318 F.R.D. 5, 8 (E.D.N.Y. 2016) (stating that a pretrial scheduling order may be modified only for "good cause," which "turns on the diligence of the moving party" and requires the party to explain "why it could not have completed the necessary discovery within the time frame established"). Plaintiff's authorities do not dictate otherwise. Accordingly, whether it is viewed as a formal prerequisite to post-judgment discovery, or simply as one factor among many, the Court finds Plaintiff's unexcused failure to obtain the discovery during pretrial proceedings relevant and, in this case, dispositive. *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976); *see also Signtech USA, Ltd. v. Vutek, Inc.*, No. 95-CV-226, 1999 WL 33290625, at *3 (W.D. Tex. Aug. 9, 1999) ("There is little case law directly addressing reopening discovery after a final judgment has been entered by the court. However, the cases on point have held that the parties should not be given the opportunity to reopen discovery for the purpose of discovering information which could have been gained before trial.").

    b. **Motive to Investigate Spoliation**

Plaintiff disputes the Court's conclusion that he had the same motive to investigate the spoliation of evidence during pretrial discovery. *See* ECF No. 163-2 at 11-12. Specifically, he

8

argues that he had no reason to question Kossowski on possible spoliation because Kossowski's job duties did not concern data preservation, he had been deposed "for the sole purpose" of confirming that Eagan was unable to perform his job responsibilities, and Plaintiff had "no reason to know that Mr. Kossowski . . . had observed or overheard discussions about email destruction." *Id.* at 12. The Court disagrees.

It is clear from the deposition transcript that Plaintiff and his counsel treated Kossowski as an insider who might possess a variety of information pertinent to the litigation, rather than as a single-purpose witness. Attorney Fleming questioned Kossowski about how Eagan was hired, ECF No. 126 at 35-36, whether he overheard conversations about Eagan's hiring or political connections, *id.* at 37, 39, 41, 59, and how Eagan reacted to Plaintiff's lawsuit. *Id.* at 66. These questions evinced an underlying belief that Kossowski may have learned relevant information about the litigation by virtue of his close proximity to and working relationship with Eagan during the relevant timeframe. Despite that belief, and their suspicion that NYSTA had purged relevant emails, Plaintiff and his counsel chose not to question Kossowski about possible spoliation of email evidence, an issue which they were then actively investigating. *See* ECF No. 158 at 13-15. The Court reaffirms its conclusion that Plaintiff "had the same opportunity and motive to investigate the issue during pre-trial discovery, and an adequate investigation would have revealed the information he now seeks." *Id.* at 20.

### c. Actions of Attorney Kaczor and Attorney Levine

Plaintiff asserts that "the activities of Attorney Kaczor and Attorney Levine in this matter constituted illegal and unethical participation in a fraud on the court." ECF No. 169 at 12. He cites several standards of professional conduct that he alleges those attorneys violated. *See id.* at 12-13. However, mere disagreement with the Court's contrary conclusion is insufficient to justify

9

relief. *See Cyrus v. City of New York*, 450 F. App'x 24, 26 (2d Cir. 2011) (summary order) (motion for reconsideration properly denied where movant's arguments "amount[ed] to a disagreement with the district court's conclusions"). In the Decision & Order, the Court concluded that the evidence before it did not reasonably suggest that "the attorneys knowingly failed to disclose the spoliation scheme[] or . . . made knowingly false representations at summary judgment" and that, "insofar as Plaintiff does not propose deposing any of the defense attorneys involved, it is unlikely that post-judgment discovery would yield more inculpatory evidence." ECF No. 158 at 19. While Plaintiff clearly disagrees with the Court's view, he does not explain how the Court's reasoning was manifestly incorrect. Without more developed argument, the Court declines to grant relief.

   **d. Other Criticisms**

   Throughout the briefing, Plaintiff's new counsel criticizes the Court and the Decision & Order in bitter, polemical terms. Counsel charges that, by considering whether Plaintiff could have obtained the discovery earlier, the Court "could be perceived" as "complicit in the fraud" insofar as it holds "the perpetrators to be non-accountable merely because the party seeking the information failed to ask the right questions when it had a chance to do so." ECF No. 163-2 at 13-14. He criticizes the Court's decision as "labored," ECF No. 161 at 3, and its rationale as "terrible public policy." ECF No. 163-2 at 13. Counsel finds it inappropriate for the Court "to forgive defendants and their counsel from the consequences of their fraud," ECF No. 169 at 20, to be "untroubled that its temple of justice was defiled," ECF No. 161 at 5 (internal quotation marks omitted), and to "blame" "the victim of the fraud rather than the parties that perpetrated the fraud." *Id.* at 4. He bemoans how "our system of justice appears to favor government representatives and persons with power and authority and does little to protect at least two (2) NYSTA employees who have attempted to raise inconvenient truths." *Id.* at 6. Counsel accuses "federal courts" of

"ignor[ing] and trampl[ing] upon" Plaintiff's legal rights. *Id.* He writes that the Court's decision "rises from the fog of an alternative reality that does not exist and has no place in a federal court that is duty bound to focus on truth and justice." *Id.* at 4-5.

On these matters, the Court will simply note that a motion for reconsideration is not a platform "to vent [one's] frustration," however "understandably disappointed" the litigant may be. *Davidson v. Scully*, 172 F. Supp. 2d 458, 464 (S.D.N.Y. 2011). As counsel himself acknowledges elsewhere in the papers, the focus of the briefing should be on the "substance" of the motion rather than "the acrimony and rhetoric that has been a constant companion to this case." ECF No. 169 at 5. Focusing on that substance, the Court concludes that Plaintiff's motion is untimely and, regardless, does not merit relief.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for reconsideration (ECF No. 163) is DENIED. This case remains closed.

IT IS SO ORDERED.

Dated: October 6, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York